IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JISELLE A.C.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Civil No. 24-1284 (GLS)

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") denial of her application for Social Security Disability Insurance benefits ("SSDI"). Docket No. 2. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 14. The Commissioner opposed. Docket No. 21. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 7. After careful review of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **AFFIRMED**.

**I.   Procedural Background**

Plaintiff worked in housekeeping, packing, machine cleaning, and car rental delivery until 2020. Tr. 30, 47, 1145-1147.[2] On July 20, 2021, Plaintiff filed an application for SSDI claiming that, as of June 5, 2020, the following conditions limited her ability to work: depression, deep vein thrombosis, gastritis, high blood pressure, lumbar, arthritis, migraine, and neuropathy. Tr. 907, 910, 927. Plaintiff received treatment from several doctors as evidenced by her disability report. The application was denied initially and upon reconsideration. Tr. 923-933. Plaintiff requested a

---

[1]   Plaintiff's last name is omitted for privacy reasons.

[2]   "Tr." refers to the transcript of the record of proceedings.

1

hearing before an Administrative Law Judge ("ALJ") and, on December 16, 2022, a hearing was held via telephone before ALJ Juan Milanés. Tr. 41-63. Plaintiff testified and was represented by counsel. Id. Vocational Expert ("VE") Dr. Ariel Cintrón Antommarchi testified at the hearing. Id. On March 9, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of June 5, 2020, through March 9, 2023, the date of the decision. Tr. 32. Plaintiff asked the Appeals Council to review but the request was denied on May 26, 2023, rendering the Commissioner's decision the final decision for review by this Court. Tr. 1-6. On June 23, 2024, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 14, 21.

## II. Legal Framework

### A. Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of no less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on the plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118, 1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment," which the Commissioner acknowledges are so severe as to

2

preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment," the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment," the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

### B.      Standard of Review

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla." It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103-04 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence.

Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir.1987).

### III.   Discussion

#### A.   The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 5, 2020, the alleged onset of disability. Tr. 16. At step two, the ALJ determined that Plaintiff had severe impairments pursuant to 20 C.F.R. §404.1520(c): chronic deep vein thrombosis of right lower extremity, chronic peripheral venous insufficiency in both legs, morbid obesity, peripheral neuropathy, lumbar spine degenerative disc disease at L5-S1 level and mild osteoarthritis, right knee and right ankle mild osteoarthritis, major depressive disorder, and generalized anxiety disorder. Id. The ALJ further found that Plaintiff had several impairments that were not severe because they did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 17-18. The ALJ classified Plaintiff's hypertension, migraines, gastroesophageal reflux disease, and gastritis as non-severe impairments. Tr. 17. The ALJ determined that Plaintiff's nicotine dependance, uncomplicated, is considered a non-severe impairment. Tr. 18. The non-severe impairments were accounted for along with Plaintiff's severe impairments in determining her RFC. Id.

At the third step of the sequential analysis, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. As part of the step-three analysis, the ALJ applied the Psychiatric Review Technique ("PRT") and found moderate limitations in three of the four broad functional areas—understanding, remembering, or applying information; concentrating, persisting or maintaining pace; and adapting or managing herself—and a mild limitation in the fourth area of interacting with others. Tr. 20-21. The ALJ concluded that the "Paragraph B" criteria

were not met because Plaintiff's mental impairments did not result in at least one extreme or two marked limitations in a broad area of functioning. Tr. 22. At step four of the sequential analysis, the ALJ determined Plaintiff's RFC. Tr. 22. The ALJ stated that, in formulating the RFC, he considered all impairments, including those that were non-severe, and that his findings regarding Plaintiff's mental functioning were also considered. Tr. 22-30. The ALJ concluded that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. 404.1567(b), except:

> having the option to alternate positions between sitting and standing once per hour for 5 to 10 minutes without being off task. She has the option to use a footrest for 10 to 15 minutes per hour without being off task. She can occasionally climb ramps and stairs and can never climb ladders, ropes, and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can frequently push or pull with the lower extremities bilaterally. The claimant is limited to simple tasks and can perform conveyor belt jobs or jobs with specific hourly production quotas. She can frequently interact with supervisors and co-employees but occasionally interact with the public.

Tr. 22. The ALJ then concluded that Plaintiff could successfully adjust to other work that existed in significant numbers in the national economy, such as a lens inserter, hand suture winder or final assembler, optical goods. Tr. 31-32. The ALJ found that Plaintiff was not disabled. Tr. 32.

### B. Plaintiff's Allegations of Error

Plaintiff moves to reverse the Commissioner's decision on the following grounds: (1) the PRT and RFC were the product of an improper lay evaluation of the medical evidence, (2) the medical source opinions were not properly evaluated, and (3) Plaintiff's subjective symptoms and limitations were not properly evaluated. The Court finds no error.

#### 1. The PRT and RFC Were Not the Product of an Improper Lay Assessment of Raw Medical Evidence

Plaintiff argues that the ALJ erred by rejecting all medical source opinions and formulating PRT and RFC findings based on an impermissible lay assessment of raw medical evidence. Docket No. 14 at p. 4. The Commissioner contends that the PRT and RFC findings are supported by substantial evidence, and that no medical opinion or prior administrative medical finding identified limitations more restrictive than those adopted by the ALJ. Docket No. 21 at p. 8.

Plaintiff relies on the well-established principle that an ALJ, as a lay fact finder, cannot interpret raw medical data in the absence of expert medical opinion. Manso-Pizarro, 76 F.3d at 17. The ALJ needs "a medical expert to translate medical evidence into functional terms." Rosa-

Figueroa v. Comm'r of Soc. Sec., 2019 WL 5622593, at *4 (D.P.R. Oct. 30, 2019). As the First Circuit has explained, "[a]n expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effects on job performance, would be apparent even to a lay person." Manso-Pizarro, 76 F.3d at 17 (citing Santiago v. Sec'y of Health & Hum. Servs., 944 F.2d 1, 7 (1st Cir. 1991)). This principle applies with particular force when assessing mental impairments. Morales v. Apfel, 225 F.3d 310, 319 (3rd Cir. 2000). "Absent a residual functional capacity assessment from an examining psychiatrist," an ALJ is generally not "equipped to conclude that [a] claimant's conditions [presents] no significant limitation on ability to work." Rivera-Figueroa v. Sec'y of Health & Hum. Servs., 858 F.2d 48, 52 (1st Cir. 1988) (citation omitted).

Nonetheless, the RFC determination is an administrative finding, not a medical opinion. Purdy v. Berryhill, 887 F.3d 7, 14 (1st Cir. 2018); 20 C.F.R. § 404.1546(c). An ALJ may "piece together the relevant medical facts from the findings and opinions of multiple physicians." Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d 136, 144 (1st Cir. 1987). The regulations require the ALJ to base his RFC determination on "all relevant evidence, including a claimant's record, the medical opinions, and a claimant's descriptions of his limitations." Vázquez-Velázquez v. Comm'r of Soc. Sec., 2021 WL 9275723, at *5 (D.P.R. Sept. 23, 2021); Lozada-Lebrón v. Kijakazi, 2022 WL 17335668, at *5 (D.P.R. Nov. 29, 2022) ("while an ALJ will consider all medical opinions of record regarding a claimant's functioning, it is ultimately the ALJ who determines the claimant's RFC based on all the evidence in the medical record").

The proper resolution of the apparent tension between these principles depends on the facts of the particular case. When an ALJ finds that a claimant has greater functional capacity than any medical source opined, courts scrutinize whether the ALJ improperly substituted medical expertise with lay judgment. Rodríguez, 647 F.2d at 222; Manso-Pizarro, 76 F.3d at 15. By contrast, when an ALJ adopts more restrictive limitations than those identified by medical sources, courts generally find no reversible error absent other deficiencies. Meléndez Alcaraz v. Comm'r of Soc. Sec., 2024 WL 322354, at *3 (D.P.R. Jan. 29, 2024) ("While the ALJ's assigned manipulative limitation was not identical to that of Dr. Queipo, it was a more restrictive determination that ultimately benefited Plaintiff, which is not error entitled to remand."); Carstens v. Comm'r of Soc. Sec., 2013 WL 3245224, at *6 (D.P.R. June 26, 2013) ("The fact that the ALJ gave plaintiff the benefit of the doubt in concluding that plaintiff's physical RFC was more limited than the physicians' RFC assessment should not be used to discount the ALJ's determination.").

a.  The PRT at Step Three[3]

The ALJ's assessment of Plaintiff's mental RFC was based on his PRT findings. The ALJ had to rate how much the impairments limited the Plaintiff in the "four broad functional areas," commonly called the "Paragraph B" criteria. 20 C.F.R. § 404.1520a(c)(3). These are: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Id. The ALJ had to use a five-point rating scale: none, mild, moderate, marked, and extreme. Id. § 404.1520a(c)(4). If the ratings were none or mild, the impairment would be generally considered to be non-severe. Id. § 404.1520a(d)(1).

The ALJ found that Plaintiff had moderate limitations in the domain of understanding, remembering, or applying information. The ALJ noted that Plaintiff did not need reminders to take care of her personal hygiene or to take her medication. Tr. 21, 95, 1138. He also noted that Plaintiff could count change, administer a savings account, and write checks or money orders. Tr. 21, 96-97, 1139-40. The ALJ then cited to mental status examinations, which indicated that, although Plaintiff exhibited anxiety and depression with some indications of diminished concentration, limited judgment and memory issues, she had average intellect, appropriate hygiene and grooming, a logical, relevant, and coherent thought process, orientation to person, time, and place, adequate concentration, attention, and introspection, and intact immediate, recent, and remote memory. Tr. 21, 655-747, 839-856, 1924-2015, 2423-2440.

The ALJ found that Plaintiff had moderate limitations in the domain of interacting with others. The ALJ noted that Plaintiff stated that she had no problems getting along with her family, friends, and neighbors, and that she got along with people of authority. Tr. 21, 98-99, 1142-1143. At the consultative examination, Plaintiff stated that, while she had problems socializing, she had

---

[3]  The Court need not analyze whether the PRT findings in step two constituted a lay assessment of raw medical data. Step two simply requires the ALJ to decide if the claimant has a severe impairment before proceeding with the sequential evaluation. Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824–825 (11th Cir. 2010). Therefore, if the ALJ concludes that at least one of the claimant's impairments is severe, "then the step two inquiry has already been resolved in the claimant's favor and the inquiry moves ahead." Vázquez-Velázquez, 2021 WL 9275723, at *5 (citations omitted). Even if the ALJ incorrectly determines some impairments to be non-severe at step two, the error is harmless if the ALJ continues the sequential analysis and takes both severe and non-severe impairments into account when formulating the RFC. Id. (citations omitted); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' ..."). Since the ALJ found Plaintiff's mental impairments severe when formulating a PRT at step two, the Court will evaluate the ALJ's PRT findings at step three, used by the ALJ when formulating the RFC at step four, which requires a more detailed assessment of the areas of mental functioning.

good relationships with her children, had friends, and had logical, relevant, and coherent thought process, orientation to person, time, and place, and no cognitive function problems. Tr. 21, 831-835, 2391-2395.

The ALJ found that Plaintiff had moderate limitations in the domain of concentrating, persisting, or maintaining pace. The ALJ noted that Plaintiff reported problems with paying attention and finishing tasks but highlighted the mental status examinations in the record. Tr. 21. As stated above, the ALJ cited to mental status examinations showing that, although Plaintiff was anxious and depressed with some notations of diminished concentration, judgment limitations and memory limitations, she had average intellect, appropriate hygiene and grooming, logical, relevant, and coherent thought process, orientation to person, time, and place, adequate concentration, attention, and introspection, and intact immediate, recent, and remote memory. Tr. 21, 655-747, 839- 856, 1924-2015, 2423-2440.

The ALJ then found that Plaintiff had a mild limitation in the domain of interacting with others. Tr. 21. The ALJ stated that Plaintiff reported managing stress by listening to music and that she was able to manage changes in her routine step by step. Tr. 21, 99, 1143. The ALJ also noted that at the consultative examination Plaintiff reported she could manage her finances, medications, and her medical appointments. Tr. 21, 837, 2397. At the same examination, mental status findings showed that she could perform simple arithmetic problems, had a logical, relevant, and coherent thought process, was oriented to person, time and place, had no cognitive function problems, and had no immediate, recent, or remote memory difficulties. Tr. 21-22, 831-837, 2391-2397.

The ALJ thus found that Plaintiff had severe mental impairments given her moderate limitations in three of the domains. Tr. 16, 20-22. The ALJ relied on substantial evidence from the record to support this finding. Tr. 21-22.

    b.    **Mental RFC**

The state agency psychologists, Dr. Piñeiro and Dr. De Paz, are the only medical source opinions on the record who provided PRT findings. Dr. De Paz concluded that Plaintiff had no severe mental impairments, while Dr. Piñeiro found mild limitations in all four functional domains. Tr. 919, 930. Had the ALJ adopted those findings, Plaintiff would have been found to have no severe mental limitations. Instead, the ALJ determined that Plaintiff had severe mental impairments with moderate limitations in three of the four "Paragraph B" domains, based on his

8

review of the APS treatment records, the consultative examination conducted by Dr. Rodríguez,[4] and Plaintiff's functional report. Tr. 20-22, 27-28. The ALJ explained that the state agency psychologists' findings were "less persuasive" precisely because the evidence supported greater limitations than those found by Dr. Piñeiro and Dr. De Paz. Tr. 28. Therefore, Plaintiff's argument on appeal fails because the ALJ's mental RFC assessment, which was based on the PRT findings discussed above, was more restrictive than any medical opinion or prior administrative finding in the record. Samsel v. Kijakazi, 2022 WL 4120154, at *13 (M.D. Penn. Sept. 9, 2022) ("[W]here an ALJ finds a more restrictive RFC than medical opinions indicate, the ALJ's RFC determination will not be found unsupported by substantial evidence without additional cause.").

Where an ALJ finds limitations more restrictive than those identified by medical source opinions, the concern that the ALJ substituted a lay judgment to the claimant's detriment is not present. Dube v. Kijakazi, 2024 WL 372841, at *1 (1st Cir. Jan. 16, 2024) (when the ALJ labeled impairments "severe" while state medical consultants deemed them "non-severe," any error was in the claimant's favor, and no showing of prejudice was made). Here, the ALJ found moderate functional limitations in three domains and deemed Plaintiff's mental impairments severe. This is a far more restrictive finding than that of the state agency psychologists. Plaintiff cannot be deemed to have been prejudiced by obtaining an RFC that afforded greater mental limitations than those found by the medical professionals. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (no reversible error where the ALJ tempered an adverse medical opinion in the claimant's favor).

Plaintiff also argues that the ALJ's decision fails to explain how his findings on moderate functional limitations could justify an RFC to perform "simple tasks," allowing for occasional interaction with the public and frequent interaction with supervisors and coworkers. However, the problem with Plaintiff's argument is the same: the ALJ's determination vis-à-vis the state administrative psychologists' determination that Plaintiff had no severe impairments to warrant any limitations benefited Plaintiff. Meléndez Alcaraz, 2024 WL 322354, at *5 ("even if the court were to determine that the ALJ's sedentary work limitation was not based on substantial evidence, that would not result in irreversible error.")

Plaintiff insists that she was prejudiced because the ALJ did not explicitly discuss a March 2021 inpatient psychiatric hospitalization. Docket No. 28 at pp. 3, 6. But this argument overstates

---

[4] Dr. Rodríguez did not issue a medical source opinion. However, the ALJ considered Dr. Rodríguez's clinical findings in the decision. Tr. 28-29.

the record. At the administrative hearing, the ALJ specifically asked Plaintiff about any history of hospitalization for mental conditions. Tr. 55. Plaintiff testified that she had only been "partially hospitalized" and confirmed that she had not been hospitalized for more than a day. Tr. 55, 2264. The partial hospitalization was thus considered and part of the evidentiary record. It was not overlooked. Moreover, APS treatment notes from December 2021 show intact mental status findings and document that Plaintiff remained stable in her psychiatric condition without any changes to her medication. Tr. 850-851. Ultimately, Plaintiff's partial hospitalization was also evaluated by Dr. De Paz, who found no mental functional limitations. Tr. 930. "The ALJ was not required to discuss every piece of evidence that favored Plaintiff," and his decision must be affirmed as long as it is supported by substantial evidence. Santiago v. Sec'y of Health & Hum. Servs., 46 F.3d 1114, 1995 WL 30568, at *4 (1st Cir. 1995). This was the case here.

  Finally, Plaintiff argues that she continued psychiatric treatment through December 2021, that certain APS records from 2021-2022 were missing, and that the ALJ erred by deciding the case without those records. Docket No. 28 at p. 6. However, the incomplete APS records do not require a remand. The Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX") establishes that "[i]f an individual refuses or fails to comply with a subpoena, the [ALJ] will consider any change in circumstance since issuing the subpoena and re-evaluate whether the evidence or facts requested are reasonably necessary for the full presentation of the case." HALLEX, Chapter I-2-5-82. An ALJ is thus not required to enforce a subpoena. But must nonetheless articulate a reason for the decision to decline enforcement of a subpoena. Serrano v. Kijakazi, 2021 WL 4477137, at *7 (E.D. Pa. Sept. 30, 2021) (citations omitted). At the hearing, the ALJ acknowledged that additional APS records were outstanding and that he had issued a subpoena. He noted that enforcing the subpoena would take a considerable amount of time. Tr. 44. The ALJ left the record open for 30 days to see if APS responded to the subpoena. Id. The ALJ also asked Plaintiff whether the missing records would document any significant change in her mental health condition, such as new hospitalizations. Id. Plaintiff responded that the missing records would reflect follow-up treatment and no new hospitalizations. Id. Accordingly, the ALJ concluded that the existing APS record, spanning from 2014 through December 2021, was sufficient to adjudicate the claim. Id. Plaintiff has failed to show any prejudice due to the ALJ's failure to consider the missing record. Rosario-Torres v. Comm'r of Soc. Sec., 2022 WL 4091889, at *5 (D.P.R. Sept. 6, 2022). And remand is not warranted to obtain records when the content of

the records would be cumulative, and the existing record is otherwise adequate. Evangelista, 826 F.2d at 139 ("remand is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing.").

### c. Physical RFC

The same reasoning forecloses Plaintiff's argument that the ALJ improperly formulated the physical RFC through a lay assessment of the medical evidence. State agency physicians, Dr. Nieves and Dr. González, found Plaintiff capable of performing light work: lifting and carrying twenty pounds occasionally and ten pounds frequently, with the ability to sit for six hours and stand or walk for four hours in an eight-hour workday. Tr. 920, 931. The ALJ found these opinions "partially persuasive" because the consultants reviewed the record as it existed on November 2, 2021, and on April 28, 2022, respectively, and therefore did not consider the complete evidentiary record. Tr. 27. After reviewing the additional hearing-level evidence such as the vocational expert's testimony, the ALJ concluded that Plaintiff was more limited than the state agency physicians had assessed. Tr. 30-31. In addition, the ALJ relied on Dr. Carro's October 2022 examination findings showing pitting edema bilaterally, abnormal foot pulses, varicose veins, and worsening symptoms with prolonged sitting and standing. Tr. 25. Based on this evidence, the ALJ restricted Plaintiff to sedentary work with a sit/stand option, constituting limitations more restrictive than those identified by the state agency physicians. Tr. 25, 27.

The ALJ did not conduct a lay assessment of raw medical data. Rather, the ALJ considered the medical opinions of Dr. Nieves and Dr. González, which confirmed the presence of functional limitations, and then applied greater restrictions in Plaintiff's favor after considering clinical findings that the reviewing consultants had not examined. Carstens, 2013 WL 3245224, at *6 (the fact that the ALJ gave the claimant the benefit of the doubt in concluding that her RFC was more limited than the physicians' assessment should not be used to discount the ALJ's determination). The case law on which Plaintiff relies, including Manso-Pizarro, addresses materially different circumstances: an ALJ finding that the claimant was capable of more than accounted for by any of the medical sources or an ALJ rejecting all medical opinion evidence, relying on lay judgment to the claimant's detriment. Neither circumstance is present here. Evangelista, 826 F.2d at 144 (ALJ may piece together relevant medical facts from the findings and opinions of multiple physicians);

20 C.F.R. § 404.1545(a)(3) (RFC is assessed based on all relevant medical and other evidence, not solely on medical opinions).

Plaintiff further argues that the ALJ failed to explain how the sit/stand option and footrest accommodation adequately account for the severity of her deep vein thrombosis and lumbar disc displacement, especially considering Dr. Carro's findings that her pain was not alleviated with rest and that she experienced severe post-thigh pain on prolonged sitting. Docket No. 28 at p. 7. This argument is unpersuasive. Dr. Carro's only functional recommendation was to avoid prolonged sitting and standing. Tr. 2477, 2486. The RFC expressly accommodates that recommendation by including a sit/stand option. While Plaintiff argues that the ALJ should have provided a more detailed explanation of his findings, she fails to identify any medical opinion or clinical finding showing that the sit/stand option at the frequency the ALJ specified was insufficient to address her impairments. The burden to establish a more restrictive RFC rested on Plaintiff, and she has not met that burden. Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018); 20 C.F.R. § 404.1545(a)(3).

### 2. Evaluation of Medical Opinions

Under 20 C.F.R. § 404.1520c(b)(2), the ALJ must articulate how he considered the supportability and consistency factors when evaluating medical opinions and prior administrative findings. Supportability can be described as follows: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). "Objective medical evidence is medical signs, laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). Consistency can be described as follows: "[t]he more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be." 20 C.F.R. § 416.920c(c)(2). A medical opinion that lacks supporting evidence or is inconsistent with evidence from other sources is not persuasive. 82 Fed. Reg. at 5854. The ALJ is required to articulate how persuasive he found the medical opinions from each medical source together in a single analysis and must explain how he

considered the supportability and consistency factors for each medical source's medical opinion in the decision. 20 C.F.R. § 416.920c(b)(2).

Plaintiff argues that the ALJ failed to evaluate the supportability and consistency factors when considering the prior administrative medical findings as required by 20 C.F.R. § 404.1520c(b)(2). However, even if the ALJ did not explicitly apply the supportability and consistency factors, a reviewing court may affirm the ALJ's decision "so long as the record permits [the court] to glean the rationale of an ALJ's decision." Mark C. v. Kijakazi, 2022 WL 16797962, at *2 (W.D.N.Y. Nov. 8, 2022) (citing Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013)). If the "the ALJ's decision set[s] forth all of the evidence upon which the ALJ relief and implicitly compare[s] the supportability and consistency of that evidence with the opinions of record," any error is considered harmless. Mark C., 2022 WL 16797962, at *2. The regulations do not require the ALJ to use the words "supportability" and "consistency" as magic words so long as the reasoning is discernible. Darling v. Kijakazi, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023); Shiebler v. O'Malley, 761 F. Supp. 3d 235, 248 (D. Mass. 2024). The ALJ's reasoning in this case is discernable.

As it pertains to Plaintiff's physical RFC, the ALJ stated that Dr. Nieves and Dr. González's opinions were "partially persuasive" because they "did not review the entire medical record, but reviewed the record as it existed on November 2, 2021, and on April 28, 2022, respectively." Tr. 27. This statement implicitly addresses both factors: the ALJ acknowledged that the consultants' findings were supported by and consistent with some evidence but found that additional evidence received after their review warranted greater restrictions. The ALJ further evaluated such evidence which warranted greater restrictions. In terms of supportability, the ALJ discussed the evidence the state agency physicians reviewed, including treatment records showing relatively normal physical examinations except for some abnormalities related to the right lower extremity and lumbar spine. Tr. 23-27, 914-15, 920-921, 926-27, 931-32. For consistency, the ALJ compared the consultants' findings to hearing-level evidence from Dr. Carro showing pitting edema bilaterally, abnormal feet pulses, and varicose veins, which supported additional restrictions like the sit/stand option. Tr. 25, 2483-2487. The ALJ considered both supportability and consistency factors. Moreover, since the ALJ's decision set forth the evidence he relied upon, any potential error by the ALJ would nonetheless be harmless. Mark C., 2022 WL 16797962, at *3 ("While the ALJ's discussion of the weight given to those medical opinions was deficient in its failure to openly

discuss the consistency and supportability factors, the Court is satisfied that the remainer of the opinion sets forth and describes sufficient evidence of record to lend substantial support to the ALJ's conclusions.").

In articulating his psychological findings, the ALJ stated that the state agency psychologists' opinions were "not supported nor consistent with the record which shows that the claimant's mental health conditions are severe impairments that cause some mental functional limitations." Tr. 28. Although the ALJ did not conduct a side-by-side comparison of the psychologists' opinions with other evidence in the record, he did discuss elsewhere in his decision the evidence that was inconsistent with those opinions. Tr. 27-28. And the ALJ went on to discuss the evidence he found more persuasive, including the APS treatment records and the consultative examination by Dr. Rodríguez. Id.; Darling, 2023 WL 4103935, at *2 ("where it is clear that the ALJ considered the opinions and made separate findings supported by substantial evidence which obviated the need for a full discussion of the medical opinions of these four practitioners, any lack of specificity in the ALJ's decision is harmless.").

In any event, Plaintiff cannot demonstrate prejudice from any alleged deficiency in the ALJ's articulation of the § 404.1520c factors. The ALJ found Plaintiff more limited than any medical opinion in the record on both the physical and mental dimensions. Where an ALJ's RFC is more restrictive than the available medical opinions, any error in the articulation of the persuasiveness factors works in Plaintiff's favor and does not constitute reversable error. Dube, 2024 WL 372841, at *1; Carstens, 2013 WL 3245224, at *6. Plaintiff has not made a showing that a more rigorous articulation of supportability and consistency would have produced a more favorable RFC.

### 3. Subjective Symptoms and Limitations

Plaintiff argues that the ALJ improperly discredited her subjective allegations of pain and functional limitation. Under SSR 16-3p, the ALJ must evaluate the intensity, persistence, and limiting effects of subjective symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 416.929(c)(4); SSR 16-3p, 2017 WL 5180304, at *7. But the ALJ may discount subjective complaints if they are inconsistent with the objective medical evidence and other evidence in the record. Romero Hernández v. Comm'r of Soc. Sec., 2020 WL 5036172, at *7 (D.P.R. Aug. 26, 2020). The ALJ's credibility determination is entitled to deference, especially

when supported by specific findings. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

With respect to Plaintiff's physical symptoms, the ALJ acknowledged Plaintiff's diagnoses of deep vein thrombosis, peripheral venous insufficiency, lumbar disc displacement, edema, and the associated pain and numbness. However, the ALJ concluded that these findings, while significant, did not support the degree of limitation alleged when considered against the overall record, which showed variably intact physical examinations. Tr. 28-29. Examinations by Dr. Acevedo, Dr. Carro and Dr. Hernández showed no tenderness to palpitation in her back and extremities, no edemas, deformities, or erythema, normal blood pressure and heart rate, oxygen saturation ranging from 98% to 99%, no shortness of breath, chest pain or palpitation, intact cranial nerves, and that she did not need assistance for bathing, eating, walking or performing daily living activities. Tr. 2416-2422, 2441-2469, 2471-2487. Treatment at Hospital Menonita Caguas generally showed no neurological or musculoskeletal limitations and normal deep tendon reflexes. Tr. 1663-1923, 2025-2157. The ALJ did not selectively rely on favorable evidence. He acknowledged both the normal and abnormal findings and concluded that the record did not support the claimed degree of limitation. Rodríguez, 647 F.2d at 222 (resolution of conflicts in the evidence belongs to the Commissioner, not the courts). The ALJ also considered the nature and consistency of Plaintiff's treatment. While Plaintiff saw various providers, the record reflects primarily medication management rather than aggressive intervention. Tr. 2469, 2495-2500, 2531. Even the treatment plan of her cardiologist Dr. Carro consisted of medication, compression stockings, weight loss, and exercise, and the only functional restriction imposed was to avoid prolonged sitting and standing. Tr. 2477-2486. That restriction was directly incorporated in the RFC through the sit/stand option.

Plaintiff argues the ALJ erred by characterizing her treatment as "sparse," pointing to visits with specialists Dr. Carro and Dr. Hernández Pons between 2020 and 2022. However, the ALJ's characterization is supported by the record. Plaintiff saw her hematologist, Dr. Hernández Pons, only twice in 2021 (Tr. 2378-2381, 2416-2422) and her cardiologist, Dr. Carro, a few times in 2022 (Tr. 2471-2487). The frequency and conservative nature of treatment were therefore proper considerations.

Plaintiff also argues that the ALJ improperly relied on a single visit in November 2022 in which Dr. Carro documented non-compliance with conservative management, and that under SSR

18-3p, lifestyle modifications such as compression stockings cannot form the basis of a non-compliance finding. SSR 18-3p does provide that prescribed treatment does not include lifestyle modifications such as dieting, exercise, or smoking cessation, and that failure to follow such recommendations should not be used to find a claimant's symptoms less severe. However, the use of compression socks constitutes a prescribed treatment, not lifestyle modifications. See Mintun v. Corizon Health, Inc., 2023 WL 1392053, at *14 (D. Idaho Jan. 31, 2023) (finding compression socks were proper treatment for bilateral edema); Anthony L. v. Kijakazi, 2022 WL 2237141, at *3 (N.D. Ill. June 22, 2022) (non-compliance with compression socks as failure to follow prescribed treatment).

Finally, Plaintiff argues that the ALJ inaccurately summarized Dr. Martínez Cazorla's consultative examination by characterizing the report as showing "no edemas, tenderness" when the report documented edema and tenderness in the right lower extremity. Plaintiff contends this misstatement undermines the subjective symptom analysis. While the Court acknowledges that the foregoing characterization was inaccurate, two considerations lead the Court to conclude that remand is not warranted. First, Dr. Martínez Cazorla did not issue a medical opinion on functional limitations. Her examination findings were classified as "other medical evidence" under 20 C.F.R. § 404.1513(a)(3), and the ALJ stated that he considered those findings even in the absence of a formal opinion. Tr. 26. Second, and more importantly, the findings of Dr. Martínez Cazorla regarding edema and tenderness were independently accounted for in the record, including in Dr. Carro's 2022 examination findings, which the ALJ discussed in detail and directly informed the more restrictive physical RFC, including the sit/stand accommodation. Tr. 25, 914, 926, 2485. The mischaracterization by the ALJ, in the context of a decision that otherwise thoroughly engaged with the objective vascular and musculoskeletal findings, does not constitute the kind of material evidentiary error that would "undermine confidence" in the RFC determination. Holden v. Astrue, 2012 WL 1753006, at *8 (N.D. Okla. May 16, 2012) (inconsistency in the ALJ's reference to examination constituted minor error and did not undermine the RFC determination).

The ALJ's analysis of Plaintiff's mental symptoms is similarly supported. The ALJ considered the APS treatment records spanning from 2014 to 2021, which showed predominantly intact mental status findings— logical, coherent, and relevant thought process; orientation to person, time, and place; intact memory; and adequate concentration— punctuated by episodes of depressed and anxious mood. Tr. 27, 668, 672-673, 850, 854-855. The consultative examination

by Dr. Rodríguez showed no significant memory problems, logical and coherent thought content, orientation in all three spheres, and no cognitive function problems. Tr. 833-837. The final APS treatment notes from December 2021 documented that Plaintiff remained stable in her psychiatric condition without changes in medication. Tr. 850-851. Taken together, this evidence provides substantial support for the ALJ's conclusion that Plaintiff's mental symptoms, while real and disabling enough to warrant a more restrictive RFC than found by the consulting psychologist, did not reach the degree of limitation alleged.

## IV.    Conclusion

The ALJ evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 3rd day of March 2026.

s/Giselle López-Soler<br>
GISELLE LÓPEZ-SOLER<br>
United States Magistrate Judge